Phipps *v.* American Employers' Insurance Company of Boston, Mass., Appellant.

Argued March 4, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Paul G. Collins,* with him *James W. Scanlon,* for appellant.

*L. E. Renard,* with him *Harry L. Thomas,* for appellee.

Opinion by Parker, J., July 18, 1935:

The plaintiff, Dean H. Phipps, has a judgment after verdict for him in an action brought against American Employers' Insurance Company of Boston on a policy of fidelity insurance for loss on account of an alleged larceny or embezzlement by one of his employees. The defendant has appealed, complaining of the refusal of its motions for judgment n. o. v. and for a new trial, and the controlling question involved is whether the evidence was sufficient to support the verdict.

By the terms of the policy, defendant undertook to pay the plaintiff "the amount of any direct pecuniary loss," not exceeding a' thousand dollars, which Charles G. McKenna might cause to the plaintiff while in his service, through any act of larceny or embezzlement, acting either alone or in collusion with others. The plaintiff offered evidence tending to show that McKenna, on July 15, 1931, became the manager and sole employee of plaintiff in a branch store at Gettysburg, Pennsylvania, dealing in automobile supplies and accessories, and terminated his employment on December 24, 1931; that a calculation made from inventories of merchandise taken at the beginning and end of the employment and receipts for additional merchandise given by McKenna and the reports of cash sales deposited in bank indicated an apparent shortage in the store of $1,515.53. There was not any direct proof as to the manner in which the loss occurred, and particularly there was not any such direct proof of larceny or embezzlement by McKenna or anyone else. Giving full force and effect to that evidence, accepted by the jury as true, it did not go further than to show that either merchandise or proceeds from the sale of goods were missing. In addition to the fact that there was an ap-

parent shortage not accounted for, there was evidence as to the manner in which McKenna terminated his service to plaintiff. On December 24, 1931, McKenna telegraphed plaintiff as follows: "Hung up in Coatesville send someone to Gettysburg shop keys at James Getty's Hotel cash behind goggles." From that date to the time of trial, McKenna did not return, although plaintiff's field manager testified: "Q. Do you know where McKenna is? A. I can tell you about where he is but I am not sure." While the defendant did not offer any evidence, it was shown by plaintiff's witnesses and by cross-examination that McKenna was careless, that prices changed from time to time, and that employees frequently had the wrong prices on goods. Such facts would have an important bearing upon the accuracy of the calculation as to actual shortage and the inferences to be drawn.

The trial court correctly instructed the jury that the burden was on plaintiff to show by a preponderance of the evidence that the loss was due to larceny or embezzlement and that it was not necessary to show such criminal misconduct by evidence that satisfied the jury beyond a reasonable doubt: Slomowitz v. Union Ins. Co., Ltd., 90 Pa. Superior Ct. 366, 369. It is equally well settled that the criminal act may be established by circumstantial evidence in a suit on an insurance policy such as we are considering: Miller v. Mass. B. & I. Co., 247 Pa. 182, 93 A. 320. In an action on a policy of insurance against loss by burglary, larceny, or theft, to recover for the loss, evidence showing circumstances connected with the loss which excludes any other theory than that it had been taken by burglary, larceny, or theft is sufficient to sustain a verdict for the insured: Perry v. Southern Surety Co., 78 Pa. Superior Ct. 222.

The question with which we are here concerned is not as to the weight of the evidence or whether the

court would come to the same conclusion on the evidence as the jury did, but is rather whether there was any evidence to submit to the jury: P. & R. Railroad Co. v. Yerger, 73 Pa. 121, 125. The proposition is this: Admitting the facts to be as shown by the plaintiff's evidence, were they sufficient to justify men of ordinary reason and fairness in concluding that the employee McKenna stole or embezzled the merchandise or the proceeds thereof? (5 Wigmore on Evidence 2494.) In cases of this nature, precedents are of little value and the judge has few tests to control or guide his ruling. There are, however, frequent situations where the courts are in comparative agreement as to the conclusions to be drawn. In a suit on a policy of fidelity insurance which undertakes to indemnify an owner for loss of goods due to a criminal act, the burden of proof resting on a plaintiff is not sustained by the mere proof of the loss of the goods: Reed v. Fidelity & Casualty Co., 189 Pa. 596, 42 A. 294. For citations from other jurisdictions see note to Rosenthal v. Amer. Bonding Co., 46 L. R. A. N. S. 561. This rule is supported by the terms of such policies for the liability is limited to losses occasioned by a particular class of dishonest acts, here those sustained through larceny or embezzlement. There are acts which are in violation of equity and good conscience through which a loss might occur, but here these are not insured against unless they amount to one of two kinds of criminal misconduct.

It is true that the departure of the employee McKenna was somewhat unconventional but, even at that, he notified his employer promptly and advised him where the keys and cash would be found. A check of the receipts shown by the cash register with the deposits made in bank to the credit of plaintiff corresponded in each instance, except on the last day when there was a discrepancy of only a few dollars. This could be accounted for by the fact that McKenna was

permitted to pay freight items, hauling, and similar charges from cash. In addition, there was due Mc-Kenna for services more than this slight difference on the last day. Giving to the evidence of the plaintiff the weight to which it is entitled, all we are warranted in inferring is that the loss might possibly have been due to larceny or embezzlement by McKenna. This, however, is a mere speculation or guess. The loss may have been due to the sale of goods on credit, to a failure to raise or lower prices corresponding with a change in the value at which they were to be charged to the employee and the price for which they were to be sold. Third parties, without any collusion with the employee, may have actually taken the goods. The result is that the circumstances shown do not exclude any other hypothesis than that the loss was due to larceny or embezzlement (Perry v. Southern Surety Co., supra).

While the consideration of all circumstantial evidence involves a weighing of probabilities, in order to sustain a verdict the degree of probability must be such as to satisfy a person of ordinary reason and fairness. We are of the opinion that the evidence, viewed in a light most favorable to the plaintiff, was not of sufficient weight to warrant more than a guess or speculation that if a shortage existed it was due to the criminal act specified in the policy and was not sufficient to sustain a verdict for plaintiff.

Judgment reversed, and it is directed that judgment now be entered for the defendant.